2021 IL App (2d) 200218-U
No. 2-20-0218
Order filed June 17, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST, not in its individual capacity but solely in its capacity as Certificate Trustee for NNPL Trust Series 2012-1, | ) ) ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 12-CH-4742 |
| ROBERT CHOI and OLGA CHTIGUEL, | ) ) ) | |
| Defendants, | ) ) | |
| (Robert Choi and Olga Chtiguel, Third-Party Plaintiffs-Appellants; PNC Bank, National Association, and Kondaur Capital Corporation, as Separate Trustee of Matawin Ventures Trust Series 2013-3, Third-Party Defendants-Appellees). | ) ) ) ) ) ) ) | Honorable Michael B. Betar, Jacquelyn D. Melius, and Daniel L. Jasica Judges, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices ZENOFF and JORGENSEN concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appellants, proceeding *pro se*, forfeited most issues on appeal by failing to comply with Illinois Supreme Court Rule 341(h)(7). For issues adequately briefed, we conclude that the trial court properly dismissed appellants' claims against prior mortgagors and request for sanctions.

¶ 2     At issue in this appeal is whether the trial court erred in dismissing a variety of claims against PNC Bank, National Association (PNC), and Kondaur Capital Corporation (Kondaur) (collectively, the Lenders), pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2016)), brought by Robert Choi and Olga Chtiguel (Homeowners) arising out of their purchase of a home and the subsequent foreclosure on the mortgage. Homeowners also challenge the trial court's denial of their motion for sanctions against Kondaur. We conclude that the trial court properly dismissed the claims and denied sanctions. Accordingly, we affirm.

¶ 3                    I. BACKGROUND

¶ 4                    A. Facts Alleged

¶ 5     The following facts and characterizations are as alleged in Homeowners' operative complaints. In 2000, Homeowners purchased a home in Ingleside, Illinois, for $113,000, subject to a mortgage. In 2003, Homeowners refinanced the loan with National City Mortgage as a Fair Housing Administration (FHA) mortgage loan for $113,999. Robert signed the note and the mortgage, while Olga signed only the mortgage, which stated, "Olga F. Choi is signing for the sole purpose of waiving homestead rights." The monthly payment under the new mortgage was $931.47 and the contract also required Homeowners to make a monthly escrow payment for property taxes and insurance. Their new interest rate was 5.5%. PNC acquired Homeowners' mortgage in 2009.

¶ 6                    1. *Homeowners' Default and Loan Modification Requests*

¶ 7     On April 1, 2012, Homeowners became unable to make their monthly payments, at which time the remaining principal balance was $60,910.17. Beginning in August 2012, Homeowners began submitting mortgage loan modifications applications to PNC. From time to time, PNC

would send Homeowners letters advising them of options to avoid foreclosure with affirmations such as "We are here to help you."

¶ 8    On September 19, 2012, PNC informed Homeowners that additional documentation for their application would be required. PNC filed a complaint for foreclosure the same day.

¶ 9    In December 2012, Homeowners engaged Consumer Credit Counseling Services (CCCS) to help them obtain a loan modification. CCCS attempted to mediate the application process with PNC and, later, with its successor, Kondaur. From December 2012 through January 2014, Homeowners submitted multiple additional mortgage loan modification applications to PNC, which rejected all of the submitted applications. In some instances, PNC stated that the applications were incomplete, while in at least two instances, PNC indicated that its rejection was due, in part, to Robert's credit score.

¶ 10    During that time, the following events took place: in January 2013, PNC filed a motion for summary judgment on the foreclosure without providing notice to Homeowners; in April 2013, Homeowners filed for bankruptcy; in May 2013, PNC filed a motion for relief from automatic stay in the bankruptcy court; and in August 2013, Homeowners were discharged in bankruptcy.

¶ 11    In addition, while Homeowners pursued a loan modification, PNC allegedly failed to notify them that they could terminate their escrow account after their principal balance had fallen below the pertinent threshold; improperly "force placed" excessive hazard insurance on their home, without notifying them, at an annual cost exceeding the previous insurance premium by over $1000; failed to conduct a face-to-face meeting with Homeowners prior to foreclosure; charged excessive legal and other fees in connection with the foreclosure and bankruptcy cases; failed to respond to requests for information and a settlement offer; refused to fairly consider Homeowners for loan modification; misled Homeowners into thinking that they would be fairly considered for

loan modification via statements in its communications to Homeowners and via its agents; repeatedly and falsely told Homeowners their applications were incomplete; and improperly based its denial of a loan modification offer, in part, on Robert's credit score.

¶ 12    In October 2013, PNC sold Homeowners' loan to Kondaur. Further, Homeowners allege, PNC received reimbursement from the Department of Housing and Urban Development (HUD) in December 2013 for the outstanding balance of Homeowners' loan and, in its claim to HUD, PNC indicated that Homeowners were "Delinquent" as of October 2011 and "Ineligible for Loss Mitigation" as of August 2012.

¶ 13                              2. *Transfer of Loan to Kondaur*

¶ 14    In February 2014, Kondaur notified Homeowners that it had been assigned their loan. After being notified of the transfer, Homeowners requested that Kondaur review the application they submitted to PNC in January 2014. Kondaur denied receiving the application when the loan was transferred. In March 2014, Homeowners, through CCCS, requested a new loan modification application packet from Kondaur, which advised that Homeowners would need to provide a down payment to be considered for modification. In response to this stipulation, CCCS referred Homeowners to the Illinois Attorney General's office, insisting that it did not have the expertise to handle their case further. The office contacted Kondaur; Kondaur responded by sending a letter to the Office indicating that Homeowners had submitted an incomplete application, which was under review pending Robert's return of a 2013 profit and loss statement for his business.

¶ 15    Over the next year, Homeowners and Kondaur engaged in a series of back-and-forth communications. Homeowners were encouraged by Kondaur's website, which contained affirmations that it offered strategies to help borrowers stay in their properties and avoid foreclosure, as well as assurances by Kondaur representatives that it was willing to work with

them. Homeowners submitted a new loan modification application after learning that Kondaur had become the new loan servicer. Kondaur followed up by requesting additional documentation (a 2013 profit and loss statement), which Homeowners then sent to Kondaur. Kondaur never notified Homeowners about their application, notwithstanding various phone inquiries about as to its status. Homeowners also submitted a cash offer to settle their obligations under the loan and end the foreclosure proceeding, which a Kondaur representative rejected via email.

¶ 16    In addition, Kondaur allegedly added various improper charges to Homeowners' account and demanded that Homeowners make an upfront payment before a loan modification plan could be implemented. First, after Kondaur acquired the loan, it raised the monthly escrow payment amount above what Homeowners had previously been paying to $1404.93. Homeowners complained numerous times to Kondaur representatives that the escrow charges were inaccurate. Second, Kondaur added various charges to Homeowners' account, including legal fees, corporate advances, and late fees, which they disputed. Third, Kondaur sent multiple documents labelled "PAYOFF DEMAND STATEMENT" to Homeowners in April, May, and October 2014. The October 21, 2014, statement indicated that Homeowners owed $81,396.11, as set forth by the following line items:

| "Description | Item Amount |
|---|---|
| Unpaid Principal Balance | $60,910.17 |
| Interest from [3/1/2012 - 11/30/2014] | $9,208.79 |
| Late Charges | $74.52 |
| Legal Fees | $1,575.00 |
| Corporate Advance | $3,576.50 |
| Escrow Advance Balance | $6,051.13 |
| TOTAL: | $81,396.11" |

Another letter, also dated October 21, 2014, further indicated that, to reinstate their loan, Homeowners would need to pay $50,183.78 by November 30, 2014, as set forth by the following line items:

| "Description | Item Amount |
|---|---|
| 32 payments at $1,404.93 *** | $44,957.76 |
| Late Charges | $74.52 |
| Corporate Advance | $3,576.50 |
| Legal Fees | $1,575.00 |
| TOTAL AMOUNT | $50,183.78" |

Finally, Kondaur issued a letter to Homeowners dated November 3, 2014, giving them two options to "resolve the delinquency" of their loan: (1) pay $15,000 by November 28, 2014, "to bring the Loan contractually current"; or (2) pay $70,000 by November 28, 2014, "to release [Kondaur's] lien from the Subject Property." Homeowners allege that a Kondaur representative "kept reminding [them] that they were senior citizens and it would be in their best interest to pay off their loan to Kondaur before it would be too late and before they would lose their house" and

that "Kondaur attempted to scare [them] into paying inflated reinstatement or payoff demands so as not to lose the house in their senior years."

¶ 17    In sum, according to Homeowners, Kondaur added excessive costs to their mortgage account balance when it maintained excessive hazard insurance on their home, overcharged Homeowners' escrow account, charged excessive legal and other fees in connection with the foreclosure, and fraudulently added charges reimbursed by HUD. Further, Kondaur misled Homeowners during the process of applying for a loan modification when it failed to respond to requests for information and send written acknowledgements of Homeowners' complaints, misled Homeowners into thinking that they would be fairly considered for loan modification via statements on its website and by its representatives, repeatedly and falsely told Homeowners their applications were incomplete, and improperly attempted to "steer" Homeowners by demanding large upfront payments in exchange for a loan modification offer. Homeowners contend that Kondaur refused to fairly consider Homeowners for loan modification. Finally, Kondaur failed to transfer loan modification application documents to its successive servicer.

¶ 18                    3. *Transfer of Loan to Wilmington*

¶ 19    In July 2015, Kondaur notified Homeowners that their loan was being transferred to a new servicer, Shellpoint Mortgage Servicing (Shellpoint). The mortgage was transferred to Wilmington Savings Fund Society (Wilmington), with Shellpoint as its servicer. Kondaur allegedly failed to transfer documentation pertaining to Homeowner's loan modification application to Shellpoint. After a year of communication, Homeowners reached a modification agreement with Wilmington in 2016. The agreement was predicated on a starting balance of $80,000; included an interest rate higher than the rate agreed to under the FHA loan; included $19,936.73 in added fees; and would

require $236,640 in total additional payments. Wilmington filed a motion to voluntarily dismiss the foreclosure against Homeowners, which the trial court granted.

¶ 20                                    B. Procedural History

¶ 21    PNC initiated this proceeding when it filed its complaint for foreclosure on September 19, 2012. On May 6, 2014, Homeowners filed a counterclaim against PNC. Subsequently, Kondaur was substituted as plaintiff in the foreclosure and Homeowners filed a third-party complaint against PNC.

¶ 22    After various discovery motions, on January 4, 2016, Homeowners filed a motion for sanctions against Kondaur pursuant to Supreme Court Rules 137 and 219(c). Ill. S. Ct. R. 137 (eff. July 1, 2013); R. 219(c) (eff. July 1, 2002). Homeowners claimed Kondaur violated Rule 137 "by making false statements in their discovery responses" and by failing to provide requested certified answers in response to a 201(k) letter and to provide certification of completeness for the discovery responses it had submitted. Homeowners then requested the court to bar Kondaur from filing any further pleadings, to enter judgment in Homeowners' favor, and to impose monetary sanctions on Kondaur in accordance with Rule 219(c). Homeowners subsequently filed their operative pleadings.

¶ 23    First, on October 21, 2016, Homeowners filed a third-party complaint against PNC.[1] The pleading contained the following claims: (1) breach of the mortgage contract; (2) breach of the "Mortgage Escrow Account Act" (765 ILCS 910/1 *et seq.* (West 2012)) disclosure form;

---

[1] Homeowners' pleading was labelled "First Amended Counterclaim Against PNC," but PNC had earlier been dismissed as a plaintiff after it sold the loan to Kondaur. Kondaur was substituted as plaintiff and PNC was reintroduced to the litigation as a third-party defendant.

(3) breach of the escrow account disclosure agreement; (4) breach of the Real Estate Settlement Procedures Act (RESPA) (see 12 U.S.C. § 2601 *et seq.* (2012)) servicing disclosure; (5) breach of the FHA loan servicing disclosure statement; (6) violation of the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 (2012)); (7) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (815 ILCS 505/2 *et seq.* (West 2012)); (8) violation of the Illinois Uniform Deceptive Trade Practices Act (UDTPA) (815 ILCS 510/1 *et seq.* (West 2012)); (9) violation of RESPA and RESPA regulations (12 C.F.R. § 1024.1 *et seq.* (2012)); (10) breach of the Fiduciary Obligations Act (760 ILCS 65/0.01 *et seq.* (West 2012)); (11) promissory estoppel; (12) violation of the Illinois Fairness in Lending Act (IFLA) (815 ILCS 120/3 *et seq.* (2014)); and (13) "promissory fraud and fraudulent scheme."

¶ 24 Then, on November 30, 2016, Homeowners filed a third-party complaint against Kondaur.[2] The pleading contained the following claims: (1) breach of the mortgage contract; (2) breach of the escrow account disclosure agreement; (3) breach of the RESPA servicing disclosure; (4) breach of the FHA loan servicing disclosure statement; (5) violation of the FDCPA; (6) violation of "Dodd-Frank Act and [Bureau of Consumer Financial Protection]" rules and regulations; (7) violation of RESPA and RESPA regulations; (8) violation of ICFA; (9) promissory estoppel; (10) violation IFLA; (11) violation of the Equal Credit Opportunity Act (ECOA) (15 U.S.C. § 1691 (2012)) and ECOA regulations (12 C.F.R. 1002.1 *et seq.* (2014));

---

[2] Homeowners' pleading was labelled "Third Amended Counterclaim." Although Wilmington was substituted as plaintiff after Kondaur transferred the loan, the record does not indicate that Kondaur was dismissed as a plaintiff as PNC had been. At the time Homeowners filed the pleading, however, Kondaur was substantively a third-party defendant.

(12) breach of the Fiduciary Obligations Act; (13) "promissory fraud and fraudulent scheme"; (14) intentional infliction of emotional distress (IIED); and (15) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 *et seq.* (2012)).

¶ 25     As to each of the Lenders, Homeowners alleged a variety of damages. First, the Lenders charged improper legal fees, late fees, corporate advance fees and charged excessive amounts for property taxes and escrow withholding. Second, Homeowners experienced emotional distress due to their attempts to obtain a loan modification, resulting in Robert experiencing "pain, with great restrictions on his movements" and Olga experiencing "spinal and neck nerve related injuries and facial palsy" requiring medical treatment and leading to missed business opportunities. They spent approximately $10,300 for medical fees and medications. Finally, Homeowners incurred various direct costs associated with the proceeding. Robert spent "approximately 1,800 hours" dealing with the foreclosure case, including consultations with attorneys and CCCS, conducting research, preparing documents, and making court appearances, resulting in $120,000 in lost income. Homeowners also spent $22,650 in legal consultation fees and over $2600 for "copying ***, office supplies, postage, parking, traveling, etc."

¶ 26     PNC and Kondaur each filed motions to dismiss Homeowners' claims in April 2017 pursuant to 735 ILCS 5/2-619.1 (West 2016). Regarding Kondaur, on January 29, 2018, the trial court dismissed all counts with prejudice except Homeowners' claim (under their RESPA and "Dodd-Frank" counts) that Kondaur violated 12 C.F.R. § 1024.41 by failing to timely respond to Homeowners' loan modification applications. On February 7, 2018, the court granted PNC's motion to dismiss, dismissing all claims with prejudice.

¶ 27     On February 22, 2019, the trial court denied Homeowners' motion for sanctions against Kondaur. In its written order, the court stated:

"(1) [Rule 219(c)] sanctions are not warranted because no allegations of failure to comply w[ith] discovery order, and no proof of unreasonable failure to comply w[ith] discovery rules[.]

(2) Rule 137 sanctions are not warranted because [Homeowners] failed to prove that Kondaur or its attorneys made false or misleading statements w[ithout] reasonable cause for purpose of undue delay or harassment [and] because [Homeowners] failed to prove any basis for awarding fees or costs."

¶ 28    Finally, on August 7, 2019, Kondaur filed its motion for judgment on the pleadings as to Olga's remaining RESPA claims (alleging violation of 12 C.F.R. § 1024.41) under 735 ILCS 5/2-615(e) (West 2018), asserting that she lacked standing to seek relief under RESPA because she was not a "borrower." On November 14, 2019, the trial court granted Kondaur's motion for judgment on the pleadings, dismissing Olga's remaining claims.

¶ 29    The only remaining claims thus were Robert's RESPA and "Dodd-Frank" counts (alleging violation of 12 C.F.R. § 1024.41). Homeowners filed a motion to voluntarily dismiss those counts, which the trial court granted on February 20, 2020. Homeowners timely appealed.

¶ 30                                    II. ANALYSIS

¶ 31    Homeowners challenge four orders on appeal: (1) the order involuntarily dismissing the claims against Kondaur; (2) the order dismissing all claims against PNC[3]; (3) the order denying Homeowners' request for sanctions against Kondaur; and (4) the order dismissing Olga's surviving RESPA and "Dodd-Frank" claims against Kondaur. Because the factual allegations and legal issues presented by Homeowners' claims against PNC and Kondaur overlap significantly, we review the trial court's dismissal of those claims together.

_____

[3] Homeowners do not challenge dismissal of their UDTPA claim against PNC.

¶ 32    As a preliminary matter, we note that Homeowners' brief, filed *pro se*, is deficient in many respects. Illinois Supreme Court Rule 341 provides that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and that "[p]oints not argued are forfeited[.]" Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). In accordance with the mandate of Rule 341(h)(7), "[a] reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are [forfeited]." *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991). The appellate court is not a depository in which the appellant may foist the burden of research and argument. *People v. Trimble*, 181 Ill. App. 3d 355, 356 (1989). Ignoring Rule 341(h)(7)'s admonition by addressing the case on the merits would require the appellate court to be an advocate for defendant's position on the issues he raises and to judge the correctness of that position. *Id.* Bases for concluding that an argument is forfeited include citation to irrelevant authority and failure to present well-reasoned argument. *Trilisky v. City of Chicago*, 2019 IL App (1st) 182189, ¶ 54.

¶ 33    Homeowners' brief is replete with conclusory factual assertions without reference to the pleadings, contentions unsupported by citation to specific statutory or regulatory provisions or to specific explanations of case law, and statements unsupported by coherent legal argument. A *pro se* litigant is held to the same standard as a licensed attorney, and noncompliance with our supreme court's rules will not be excused. See *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 16. As necessary, we point out arguments Homeowners have forfeited for failure to comply with Rule 341(h)(7).

¶ 34                    A. The Trial Court's Dismissal of Homeowners'
                    Third-Party Complaints Against Kondaur and PNC

¶ 35    The trial court dismissed Homeowners' claims pursuant to section 2-615 of the Code in part and section 2-619 of the Code in part. Dismissal of claims under either section is reviewed *de novo. Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 23. When reviewing a 2-615 motion, a court must view the facts alleged in the pleading in the light most favorable to the complainant, take all well-pleaded facts as true, and determine whether they sufficiently state a cause of action upon which relief may be granted. *Id.* ¶ 20. "Well-pled facts are specific allegations of fact that bring a complaint within a recognized cause of action; mere conclusory allegations unsupported by specific facts will not suffice." (Internal quotation marks omitted.) *Porter v. Cub Cadet LLC*, 2020 IL App (2d) 190823, ¶ 10.

¶ 36    A section 2-619 motion admits the legal sufficiency of a claim but raises an affirmative matter that defeats the claim. *Rehfield*, 2021 IL 125656, ¶ 21. The movant bears the burden of establishing the existence of the affirmative matter, either by showing it is apparent on the face of the claim or by providing supporting evidence such as affidavits or other materials. *Id.* ¶¶ 21-22. Once the movant has met this burden, the burden shifts to the nonmovant to refute the affirmative matter or establish that an essential element requires the movant to prove a material fact. *Id.* ¶ 22. Facts asserted by the movant via supporting evidence must be refuted by the nonmovant or else deemed admitted, but they are still viewed in the light most favorable to the nonmovant. *Id.* Where a trial court grants a section 2-619 motion to dismiss, a reviewing court must determine (1) whether there was a genuine issue of material fact and, if none, (2) whether dismissal was proper as a matter of law. *Id.* ¶ 23.

¶ 37            1. *Claims Properly Dismissed by the Trial Court*

¶ 38     The following claims were sufficiently argued in Homeowners' brief to permit our review. The trial court ostensibly dismissed with prejudice each claim pursuant to section 2-615 of the Code.

¶ 39                                  a. Breach of Contract

¶ 40     Homeowners pled nine total counts alleging breach of contract premised on various violations of HUD and RESPA regulations by both PNC and Kondaur. The counts alleged breach of the mortgage contract itself as well as other supporting documents and disclosure forms. The trial court dismissed these claims, in part, based on Homeowners' inability to demonstrate that they substantially performed under the contract. We conclude that the trial court's ruling was correct and therefore address all breach of contract counts together.

¶ 41     "[T]o establish a breach of contract, the plaintiff must prove (1) a valid and enforceable contract exists, (2) he substantially performed, (3) the defendant committed a breach, and (4) resulting damages. *Rocha v. FedEx Corp.*, 2020 IL App (1st) 190041, ¶ 95.

¶ 42     Here, Section 9(a)(i) of the mortgage contract, attached to Homeowners' pleadings, specifically provides: "Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment." Homeowners acknowledge in their brief that they stopped making monthly payments in April 2012. This default precluded Homeowners from arguing that they substantially performed.

¶ 43     Homeowners, citing without discussing a slew of cases from other jurisdictions, appear to argue that their default was not a material breach because the Lenders failed to comply with federal regulations as required by the mortgage contract. Homeowners insist that "[t]he Mortgage stipulates procedures in case of a borrower's default" with which the Lenders failed to comply. We note, however, that a borrower may not bring private suit against a lender alleging the lender

has violated HUD regulations unless the mortgage contract specifically incorporates the lender's compliance with HUD regulations into its terms. See *Hayes v. M & T Mortgage Corp.*, 389 Ill. App. 3d 388, 391 (2009). The mortgage contract must demonstrate "an intention to completely adopt" federal regulations, "not merely require compliance with specified portions." *Id*. at 390-91.

¶ 44    *Hayes* squarely addresses this issue. In *Hayes*, the appellate court concluded that general references to HUD regulations in a mortgage contract did not sufficiently incorporate those regulations into the contract. *Hayes*, 389 Ill. App. 3d at 390-91. The provision at issue in *Hayes* provided as follows:

> "In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." (Internal quotation marks omitted.) *Hayes*, 389 Ill. App. 3d at 389.

After the homeowner defaulted, she filed a breach of contract claim for damages based on the lender's purported failure to comply with applicable HUD regulations. The trial court dismissed the complaint. The appellate court affirmed, concluding that the proffered language did not reflect an intent to make each HUD regulation enforceable under the contract. *Id.* at 391. Rather, the cited provision "reflect[ed] only an acknowledgment that the lender's foreclosure rights under the mortgage [were] subordinate to applicable HUD regulation." *Id.* Thus, the lender's alleged breach of HUD regulations did not create a cause of action for the homeowner. *Id.*

¶ 45    Homeowners state in their brief, in conclusory fashion, "Borrower's default of HUD-FHA loan is not a material breach of contract because the clear language of the loan specifies steps lender must take in the case of default." However, they fail to identify specific language in the

contract which shows "an intention to completely adopt" any of the regulations Homeowners alleged PNC and Kondaur violated. *Id.* Our review of the record discloses the following potentially relevant provisions in the contract: (1) "Secretary" is defined as Secretary of Housing and Urban Development; (2) "Default. Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument"; and (3) "Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary."

¶ 46 The third provision in the preceding sentence is *identical* to the provision discussed in *Hayes*, and the second provision is redundant. As a matter of law, this language did not give Homeowners a private right of action to enforce the Lenders' alleged violations of federal regulations. Because Homeowners do not point to any other language contained in the mortgage contract that could have created a private right of action, we conclude that Homeowners failed to establish that one exists.

¶ 47 We further note that Homeowners' citation to *Hammer v. Residential Credit Solutions, Inc.*, No. 13 C 6397, 2015 WL 7776807 (N.D. Ill. Dec. 3, 2015), and *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863 (N.D. Ill. 2002), is unavailing. Neither case involved a borrower alleging breach of contract based on a lender's violation of RESPA requirements or regulations. See *Hammer*, No. 13 C 6397, 2015 WL 7776807, at *4 (analyzing lender's argument that it did not breach contract because no enforceable agreement was formed); *Ploog*, 209 F. Supp. 2d at 874 (analyzing borrower's allegation that lender breached contract by paying taxes from escrow account on property she did not own).

¶ 48    Since Homeowners cannot show that the Lenders were contractually obligated to follow applicable regulations, they cannot establish that their default was not material. Thus, Homeowners are unable to show that they satisfied the second element of a breach of contract claim. The trial court did not err in dismissing these claims.

¶ 49                            b. Fair Debt Collection Practices Act (FDCPA)

¶ 50    Homeowners brought claims against both PNC and Kondaur under the FDCPA. The trial court dismissed both claims on the bases that both PNC and Kondaur owned the debt when they tried to collect and that neither PNC nor Kondaur qualified as a "debt collector" under the FDCPA pursuant to *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1723 (2017). Homeowners' contend that the Lenders each qualified as a "debt collector" under the FDCPA.

¶ 51    The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (2012). In *Santander*, the Supreme Court held that the defendant purchaser of defaulted auto loans did not qualify as a "debt collector" under section 1692a(6) because it had not regularly sought to collect debts "owed \*\*\* another." *Santander*, 137 S. Ct. at 1721, 1726. The Court explained, "under the definition at issue before us you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector." (Emphasis in original.) *Id.* at 1724.

¶ 52    Homeowners quote, without providing any analysis, two federal decisions to support their assertion that the trial court erred. See *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 360 (6th Cir. 2012) ("Although there is no statutory definition of 'loan servicer' under the Act, a loan servicer will become a debt collector under § 1692a(6)(F)(iii) if the debt was in default or treated

as such when it was acquired."); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."). Quite apart from Homeowners' failure to analyze these cases, we note that they appear to be abrogated by the Supreme Court's *Santander* decision and we decline to consider them.

¶ 53 Reviewing the pleadings, we conclude that Homeowners failed to sufficiently allege that either PNC or Kondaur (1) "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or (2) "regularly collects or attempts to collect *** debts owed or due *** another." 15 U.S.C. § 1692a(6) (2012). Homeowners did state in their pleadings that PNC and Kondaur, respectively, collected payments for debt "owed to National City" and "acted as a third-party debt collector," but failed to support these statements with specific facts to establish that either Kondaur or PNC attempted to collect on Homeowners' loan as a third-party. To the contrary, Homeowners acknowledge in their brief that PNC was a "mortgagee" and that Kondaur "purchased the loan in foreclosure." "[M]ere conclusory allegations unsupported by specific facts will not suffice." *Porter*, 2020 IL App (2d) 190823, ¶ 10. Thus, the pleadings were facially deficient, and the trial court did not err when it dismissed Homeowners' FDCPA claims.

¶ 54 We note separately the Homeowners' complaint that "[t]he court relied on a case law not previously cited by PNC in its Reply." To the extent this statement is intended to undermine the trial court's dismissal of Homeowners' FDCPA claim against PNC, it is unsupported by additional argument or citation to authority, thus it is forfeited pursuant to Rule 341(h)(7).

¶ 55                                          c. Illinois Fairness in Lending Act (IFLA)

¶ 56    Homeowners next contend the trial court erred in denying their IFLA claims for failure to make sufficient factual allegations. Section 3 of the IFLA provides,

"§ 3. No financial institution, in connection with or in contemplation of any loan to any person, may:

* * *

(d) Utilize lending standards that have no economic basis and which are discriminatory in effect.

(e) Engage in equity stripping or loan flipping." 815 ILCS 120/3(d), (e) (West 2012).

Section 2 provides,

" 'Loan flipping' means to assist a person in refinancing a loan secured by the person's principal residence for the primary purpose of receiving fees related to the refinancing when (i) the refinancing of the loan results in no tangible benefit to the person and (ii) at the time the loan is made, the financial institution does not reasonably believe that the refinancing of the loan will result in a tangible benefit to the person." *Id.* § 2(e).

First, Homeowners argue that PNC denied them modification due to Robert's credit score, and thus that decision had "no economic basis." See *Id.* § 3(d). Second, Homeowners argue "Kondaur used Chois' age to steer them from modification into paying off the loan," thus Kondaur engaged in age discrimination and impermissible "loan flipping." See *Id.* §§ 2(e), 3(e).

¶ 57    Homeowners' claims are based solely on conclusory allegations. They pleaded no specific facts to show that PNC's purported denial of a loan modification on the basis of Robert's credit score had "no economic basis and [was] discriminatory in effect." *Id.* § 3(d). Nor did they plead specific facts to show that Kondaur's purported denial of a loan modification was based on Homeowners' ages or that Kondaur's conduct amounted to "assist[ing] a person in refinancing a

loan secured by the person's principal residence for the primary purpose of receiving fees related to the refinancing." *Id.* §§ 2(e), 3(d). The trial court did not err in dismissing Homeowners' IFLA claims.

¶ 58                              d. "Promissory fraud and fraudulent scheme"

¶ 59     Homeowners next argue that the trial court erred in dismissing their promissory fraud and fraudulent scheme claims against both PNC and Kondaur. To prevail on a claim of common law fraud, a plaintiff must show the following: "(1) a false statement of fact by the defendant, (2) made with the knowledge that the statement was false; (3) the defendant intended that the statement would induce the plaintiff to act; (4) the plaintiff justifiably relied upon the statement; and (5) the plaintiff suffered damages arising from that reliance." *Abazari v. Rosalind Franklin University of Medicine & Science*, 2015 IL App (2d) 140952, ¶ 14. Under the Illinois promissory fraud doctrine, a plaintiff can assert a fraudulent promise to perform a future act as the basis for a fraud claim if the promise was part of a scheme to defraud. *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 33.

¶ 60     The trial court dismissed the claims against the Lenders on various grounds, including, essentially, that Homeowners failed to sufficiently allege that either party made knowingly false promises to consider their applications. We agree.

¶ 61     Homeowners assert, in conclusory fashion, that both parties communicated the intent to evaluate their loan modification applications, though intending not to evaluate these applications or to make offers for loan modification.

¶ 62     Specifically, Homeowners contend that Kondaur made false promises on its website, and through its representatives, that it would help borrowers keep their properties. They fail to explain how Kondaur's representations amount to an unambiguous promise to help Homeowners or how

the representations were demonstrably false. The failure to develop this argument violates Rule 341(h)(7). Thus, this argument is forfeited.

¶ 63    Homeowners' claim with respect to PNC is somewhat more developed. They claim specifically that PNC (1) filed its foreclosure action on the same day it requested additional documentation for Homeowners' application in September 2012, (2) filed a motion for summary judgment in January 2013 while still representing to Homeowners that it was willing to consider their application, (3) moved to stay Homeowners' bankruptcy proceeding in May 2013 in order to expedite the foreclosure, and (4) misrepresented to Homeowners that it still owned the mortgage months after selling it in October 2013. These facts, according to Homeowners, demonstrate that PNC never intended to consider their application, thus its promise to do so was knowingly false.

¶ 64    We find these allegations insufficient as well. Homeowners assert no specific facts to show that PNC would not have considered a *complete* application had one been submitted. To the contrary, Homeowners acknowledge that PNC sent letters confirming it would evaluate their submitted applications, as well as requests for additional documents. Meanwhile, they also acknowledge that PNC did not initiate foreclosure proceedings until four or five months after Homeowners defaulted on their mortgage, and nothing in their pleadings suggests PNC's legal actions were out of the ordinary following a borrower's default. We thus cannot conclude the trial court erred in dismissing Homeowners promissory fraud and fraudulent scheme claim against PNC.

¶ 65                    2. *Claims Forfeited Under Rule 341(h)(7)*

¶ 66                       a. Illinois Consumer Fraud Act (ICFA)

¶ 67    The trial court dismissed Homeowners claims against both PNC and Kondaur under ICFA. To state a claim under ICFA, a plaintiff must allege (1) the defendant engaged in a deceptive act

or practice, (2) the defendant intended that the plaintiff rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff suffered actual damage, and (5) the defendant's deception proximately caused plaintiff's damage. 815 ILCS 505/2, 10a(a) (West 2012); *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 190 (2005). To establish proximate causation, a plaintiff must plead facts to show he was actually deceived by a purported misrepresentation. See *Avery*, 216 Ill. 2d at 199. Further, proximate cause requires cause-in-fact, or "but for" causation. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 269 (2005). Unfair conduct is actionable under ICFA, and a plaintiff may show conduct is unfair because it offends public policy. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002).

¶ 68    Homeowners argue that PNC violated ICFA by failing to consider their applications for a loan modification as required by federal law and by filing for foreclosure in September 2012 despite their submission of a loan modification application in August 2012, citing *Griffin v. U.S. Bank National Ass'n*, No. 15 CV 6871, 2016 WL 3671450, at *4 (N.D. Ill. July 11, 2016), and *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortgage Loan Trust, Series 2003-1*, 787 F. Supp. 2d 747, 754 (N.D. Ill. 2011). While we are of course not bound by the federal courts' interpretation of ICFA, we note also that Homeowners misrepresent the court's holding in *Griffin*. The *Griffin* court, in dicta, stated: "Plaintiff's allegations that [the defendant] filed for foreclosure without reviewing him for loss mitigation options *and conditioned the dismissal of the foreclosure complaint on plaintiff's dismissal of his counterclaim* are sufficient to plead an ICFA claim for unfairness." (Emphasis added.) *Griffin*, 2016 WL 3671450, at *4. Homeowners omitted the italicized portion in their brief, which is significant because they do not allege PNC attempt to obtain a dismissal of Homeowners' third-party complaint by improper means.

¶ 69     Homeowners' claims that PNC refused to consider their applications is deficient. They assert that PNC told them repeatedly that they needed to submit additional documentation to complete their application, but offer only conclusory allegations that PNC had no intention to offer them a loan modification. In the absence of specific facts, bare allegations that PNC acted "deceitfully" do not suffice. For the same reasons, Homeowners' allegations against Kondaur that it, too, had no intention to offer them a loan modification and that it acted deceitfully are insufficient.

¶ 70     Homeowners further contend that the trial court erred when it dismissed their ICFA claim pertaining to PNC's and Kondaur's communications, respectively, offering to help them obtain a loan modification, as well as to representations on Kondaur's website that it would help borrowers avoid foreclosure. The trial court characterized these communications as "puffery." See *Avery*, 216 Ill. 2d at 173 (stating that "puffing" cannot form the basis of an ICFA claim); *Century Universal Enterprises, Inc. v. Triana Development Corp.*, 158 Ill. App. 3d 182, 203 (1987) (concluding defendant's statement that it would "use its best efforts in the management, operation and control of said Joint Venture Project" amounted to "puffery" insufficient to support fraud claim). Homeowners cite no authority to refute the trial court's characterization of those communications and fail to develop this argument.

¶ 71     Finally, Homeowners state that "Kondaur used deceptive, false and unethical tactics to defraud [them] of their rights (lawful loss mitigation process, proper loan servicing, accurate fee charges, anti-steering protection, correct escrow account calculations)." But they again fail to point to specific factual allegations in their complaint to support their bare assertions that Kondaur's conduct amounted to cognizable deceptive or fraudulent acts under ICFA.

¶ 72    For the reasons stated, Homeowners failed to adequately develop and support their argument that the trial court erred when it dismissed their ICFA claims in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 73        b. Real Estate Settlement Procedures Act (RESPA) and RESPA Regulations

¶ 74    The trial court dismissed with prejudice all of Homeowners' claims predicated on the Lenders' violations of RESPA and RESPA regulations, with the exception of those claims alleging Kondaur violated 12 C.F.R. § 1024.41, which Homeowners later voluntarily dismissed. Homeowners challenge the trial court's involuntary dismissal ruling. As to PNC, Homeowners assert that (1) PNC charged incorrect amounts for their escrow account, (2) PNC failed to provide timely notice of sale, (3) PNC failed to respond to their "QWRs/RFIs," (4) PNC failed to notify them before "force placing hazard insurance," and (5) PNC failed to comply with loss mitigation procedures. As to Kondaur, Homeowners assert that (1) "Kondaur was obligated to respond to QWRs and RFIs under RESPA" and (2) "Kondaur violated RESPA provisions related to escrow account, QWR; and 'any other obligation', including loss mitigation, anti-steering and loan transfer." Homeowners, however, fail to adequately cite to authority establishing their right to relief and do not attempt to explain how the trial court erred or otherwise develop their argument in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 75            c. Breach of Fiduciary Obligations Act Claims

¶ 76    Homeowners argue the trial court erred in dismissing their Fiduciary Obligations Act claims against both PNC and Kondaur on the grounds that neither party was in a fiduciary relationship with Homeowners. Homeowners fail to provide a citation for their cause of action under the Fiduciary Obligations Act or otherwise develop their argument in violation of Rule 341(h)(7). The only statutory citation they provide in either their briefs or in their underlying

pleadings is to the definition of "fiduciary" under the Fiduciary Obligations Act. See 760 ILCS 65/1 (West 2012). They also cite inapposite case law, such as *Johnson v. Maki & Associates*, 289 Ill. App. 3d 1023, 1028 (1997), which stands for the proposition that a *real estate broker* holding earnest money in escrow owes a fiduciary duty to home purchasers. Thus, Homeowners forfeit this argument.

¶ 77                                    d. Promissory Estoppel

¶ 78    Homeowners argue the trial court erred in dismissing their promissory estoppel claims against PNC and Kondaur on the ground that Homeowners failed to allege either party made an unambiguous promise. Homeowners contend that their pleadings sufficiently show that PNC and Kondaur, respectively, made unambiguous promises to consider their loan modification applications. These bare assertions are unsupported by reference to any specific factual assertions or case law supporting their position and thus violate Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 79                                    e. "Violations of Dodd-Frank Act and CFPB"

¶ 80    The trial court's order dismissing most of the allegations against Kondaur under Homeowners' "Dodd-Frank" count listed eight separate bases for finding the claim insufficient.[4]

---

[4] The Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) established the Bureau of Consumer Financial Protection to "regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. Law No. 111-203, 124 Stat 1376 (2010). The Bureau promulgates rules which impose various requirements on mortgage servicers. See 12 C.F.R. § 1001.1 *et seq.* (2012).

Homeowners fail to respond to any of the court's reasons for dismissal with reasoned analysis. Instead, they merely restate allegations in the complaint, stating unsupported legal contentions and listing numerous cases without explaining how they apply to their case. Homeowners argue the trial court erred for the following reasons: (1) the court's conclusion that "error resolution and request for information process did not apply because the loan was in foreclosure" was erroneous, citing "12 C.F.R. 1024" generally; (2) the court's conclusion that there is no private right of action for violation of loss mitigation rules was erroneous, citing 12 C.F.R. 1024.41; (3) the court's conclusion that Kondaur, an assignee, was not subject to liability under 12 C.F.R. 1026.36 for violation of payoff demand requirements was erroneous because "Kondaur was obligated to comply with all requirements of Dodd-Frank and CFPB rules"; and (4) the court's dismissal of "abusive practices, anti-steering and fee regulations claims as not substantiated" was erroneous because Homeowners "pled in detail" how Kondaur violated applicable requirements. Homeowners also provide numerous string citations to cases without conducting any type of analysis. Homeowners fail to support their contentions with specific citation to authority or to develop their arguments with reference to the authority cited in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 81                    f. Equal Credit Opportunity Act (ECOA) Regulations

¶ 82    Homeowners argue the trial court erred in dismissing their ECOA claims against Kondaur in one sentence: "The court erred in dismissing the claim for not adequately alleging age discrimination but ignored that the claim is based on Kondaur's violation of Chois' protected rights under Regulation B and 12 CFR 1002." They fail to develop their argument in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 83                    g. Intentional Infliction of Emotional Distress (IIED)

¶ 84    Homeowners argue the trial court erred in dismissing their IIED claim against Kondaur because it incorrectly concluded their allegations did not rise to the level of "extreme and outrageous" conduct. They cite just two inapposite cases, neither of which addresses IIED. See *Stenwall v. Bergstrom*, 398 Ill. 377 (1947) (reversing dismissal of a complaint seeking partition and an accounting of inherited land); *Barzowski v. Highland Park State Bank*, 371 Ill. 412 (1939) (affirming dismissal of a complaint seeking to quiet title). Homeowners fail to provide citation to relevant authority and to develop their argument in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 85              h. Racketeer Influenced and Corrupt Organizations Act (RICO)

¶ 86    Homeowners argue the trial court erred in dismissing their RICO claims against Kondaur merely by stating in conclusory fashion that Kondaur engaged in a scheme to defraud, had intent to defraud, and used the mails or wire communication in furtherance of the scheme to defraud. They also cite case law and to the record without any explanation. Homeowners fail to develop their argument in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 87              B. The Trial Court's Order Denying Homeowners'
                  Motion for Sanctions Against Kondaur

¶ 88    The Homeowners next challenge the trial court's denial of their motion for sanctions against Kondaur pursuant to Rules 137 and 219(c). Rule 137, in pertinent part, provides that an attorney of record is required to sign any pleading, motion, or other document. Ill. S. Ct. R. 137(a) (eff. July 1, 2013). This signature certifies that the attorney "has read the pleading, motion or other document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost

of litigation." *Id.* Further, the court may impose an appropriate sanction on an attorney or a party for the failure to comply with this rule. *Id.* Rule 219(c) provides that a court may, on motion, provide relief if a party unreasonably fails to comply with a discovery rule or with an order entered under court rules. Ill. S. Ct. R. 219(c) (eff. July 1, 2002).

¶ 89    A trial court's ruling on a motion for sanctions is reviewed for an abuse of discretion. *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 35; *Harris Trust & Savings Bank v. Otis Elevator Co.*, 297 Ill. App. 3d 383, 394 (1998). An abuse of discretion occurs only when the court's ruling is arbitrary, fanciful, or unreasonable. *Bahena*, 2019 IL App (1st) 172918, ¶ 35. Homeowners contend that the trial court abused its discretion when it denied their motion for sanctions against Kondaur.

¶ 90    Specifically, Homeowners assert that counsel for Kondaur "fil[ed] pleadings based on false information," "provided false discovery responses," "failed to conduct a basic search of Kondaur's electronically stored records," and "failed to make a reasonable inquiry into their client's records to uncover the truth of the matter and complete discovery responses in compliance with court orders and instructions." These allegations were premised on Homeowners' underlying allegations that they submitted a complete loan modification application to Kondaur and that Kondaur repeatedly and falsely denied receiving a complete application, thus violating RESPA regulations. They also incorrectly assert that "Kondaur *** was found in violations of loss mitigation procedures under 12 CFR 1024.41 and RESPA" by the trial court. The record indicates that the trial court denied Kondaur's motion to dismiss Homeowners' claims "solely with respect to the allegations[ ] that Kondaur failed to respond to [Homeowners'] loss mitigation application within the time required by 12 C.F.R. § 1024.41" and dismissed all other RESPA claims.

¶ 91　Homeowners fail to identify specific factual allegations in their motion for sanctions to support their general allegations, fail to identify specific trial orders Kondaur allegedly violated, and fail to cite to relevant authority to show how the trial court abused its discretion in violation of Rule 341(h)(7). Thus, Homeowners forfeit this argument.

¶ 92　　　　　C. The Trial Court's Order Dismissing Olga's Remaining Claims

¶ 93　Finally, Homeowners contend that the trial court abused its discretion when it granted Kondaur's section 2-615 motion to dismiss Olga's remaining claims due to lack of standing. Dismissal of claims under section 2-615 is reviewed *de novo*. *Rehfield*, 2021 IL 125656, ¶ 23. When reviewing a 2-615 motion, a court must view the facts alleged in the pleading in the light most favorable to the complainant, view all well-pleaded facts as true, and determine whether they sufficiently state a cause of action upon which relief may be granted. *Id.* ¶ 20. "Well-pled facts are specific allegations of fact that bring a complaint within a recognized cause of action; mere conclusory allegations unsupported by specific facts will not suffice."

¶ 94　Section 2605 of RESPA imposes various requirements on federally related mortgage lenders and provides a private right of action to a "borrower" in the event the lender fails to comply with any provision of the section. 12 U.S.C. § 2605 (West 2012); *Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019); see also 12 C.F.R. § 1024.41 (West 2014) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."). A "borrower," in turn, means a person who is personally obligated under a "federally related mortgage loan" and does not include one who merely signs a mortgage. *Keen*, 930 F.3d at 804, 806 (holding that home purchaser's wife, who signed the mortgage, but not the loan, was not a "borrower" under RESPA and did not have private right of action).

¶ 95    Homeowners do not contend that Olga signed the note. Instead, they argue that she qualifies as a "borrower" because she signed the mortgage. Applying *Keen*, this action was insufficient to confer standing to enforce RESPA requirements, thus Olga did not have a private right of action.

¶ 96    Alternatively, Homeowners argue that Kondaur should have been estopped from asserting that Olga did not have a private right of action. A party asserting equitable estoppel must show the following elements:

> "(1) [T]he other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 82–83 (2006).

Further, the party must establish by clear and convincing evidence that the elements have been met. *In re Scarlett Z.-D.*, 2015 IL 117904, ¶ 26. A trial court's ruling on an equitable estoppel defense is reviewed *de novo* if it is based on a legal conclusion, otherwise it will not be disturbed unless it is against the manifest weight of the evidence. *Id.*

¶ 97    Homeowners fail to point to specific facts to show that all of the elements of estoppel have been satisfied. Rather, they insist that Kondaur should be estopped from asserting Olga's lack of

standing because it failed to raise the issue until several years after becoming a party to the litigation, adding, "Through its inconsistent actions carried through by different attorneys since 2014, Kondaur had wasted court's and Chois' time and resources." Assuming *arguendo* Kondaur's effort to raise the issue was untimely, Homeowners fail to explain how Kondaur "misrepresented or concealed material facts" relevant to Olga's standing, how Homeowners detrimentally relied on the alleged misrepresentation, or how Homeowners would be prejudiced by Kondaur's assertion that Olga lacked standing. *DeLuna*, 223 Ill. 2d at 82-83. Moreover, that Robert's and Olga's claims are identical and were pled together belies any argument that Kondaur's delay prejudiced Olga, or otherwise wasted time or resources. Homeowners would have expended the same effort pursuing their claims solely in Robert's name. Homeowners' failure to support their estoppel claim violates Rule 341(h)(7), and Homeowners forfeit this argument.

¶ 98                                III. CONCLUSION

¶ 99     For the reasons stated, we affirm the judgments of the circuit court of Lake County.

¶ 100   Affirmed.